United States District Court
Southern District of Texas

**ENTERED**

December 16, 2020

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KAREN MINIEX, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-20-1477 |
| | § | |
| THE LAW OFFICE OF E. SHARON | § | |
| THORNTON, LLC, | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

Petitioner Karen Miniex filed a Petition to Confirm Arbitration Award [Doc. # 1], seeking confirmation of the December 13, 2019 Final Award ("Final Award") [Doc. # 1-1] in the arbitration filed by Respondent The Law Office of E. Sharon Thornton, LLC ("Thornton"). Respondent Thornton filed a Motion to Vacate [Doc. # 14], seeking an order vacating the Final Award. Miniex filed a Response in Opposition [Doc. # 21] to the Motion to Vacate, and Thornton filed a Reply [Doc. # 26]. Having reviewed the record and applicable legal authorities, the Court **grants** the Petition to Confirm Arbitration Award and **denies** the Motion to Vacate.

## I.    BACKGROUND

In February 2017, Miniex filed a lawsuit against her former employer, the Houston Housing Authority ("HHA"), *Karen Miniex v. Houston Housing Authority*,

Civil Action No. 4:17cv0624 ("Retaliation Lawsuit"). Miniex alleged, *inter alia*, that HHA retaliated against her in violation of the False Claims Act ("FCA").

Prior to filing the Retaliation Lawsuit, Miniex was represented by Thornton. Miniex and Thornton had been law school classmates at the University of Michigan Law School, and they remained friends.

At the time the Retaliation Lawsuit was filed, Miniex was also represented by Scott Cook in Austin, Texas. In July 2017, Miniex retained Terrance Robinson to replace Cook as her attorney in the Retaliation Lawsuit. In December 2017, following Robinson's October 2017 withdrawal as counsel, Miniex retained Zenobia Harris Bivens as lead counsel. After December 2017, Thornton was no longer counsel for Miniex in the Retaliation Lawsuit.

On May 8, 2018, Thornton filed a Demand for Arbitration with the American Arbitration Association ("AAA") against Miniex, seeking an award of $547,723.75 in attorney's fees. *See* Demand for Arbitration [Doc. # 22-1], p. 4. In the Arbitration, Thornton asserted a *quantum meruit* theory to support her claim for the requested fees. *See id.*

Meanwhile, in federal court the Retaliation Lawsuit proceeded through discovery, motion practice and, in March 2019, trial. On March 21, 2019, the jury in

the Retaliation Lawsuit returned a verdict in Miniex's favor and awarded her approximately $1.8 million in damages. *See* Jury Verdict [Doc. # 242 in 4:17cv0624].

On April 28, 2019, Thornton, represented by attorney Shannon Lang, filed a Motion to Intervene in the Retaliation Lawsuit. *See* Motion to Intervene [Doc. # 245 in 4:17cv0624]. By Memorandum and Order entered June 5, 2019, the Court granted Thornton's request to intervene, but limited her intervention "to advocat[ing] that Miniex is entitled to recover attorney fees for Thornton's work, not what Miniex owes [Thornton] directly." *See* Memorandum and Order [Doc. # 264 in 4:17cv0624], p. 7. The Court held that the "amount [Thornton] is owed from Miniex is a matter to be resolved by the arbitrator in the pending arbitration." *Id.* By Memorandum and Order entered September 13, 2019, the Court held that "30% of Thornton's [$474,003.75] request is a reasonable attorney fee for the work she performed related to the claim on which Miniex prevailed." *See* Memorandum and Order [Doc. # 277 in 4:17cv0624], p. 25. The Court awarded Miniex attorney's fees for Thornton's services in the amount of $142,200.00. *See id.* at 29. On September 26, 2019, the Court entered an Amended Final Judgment [Doc. # 279 in 4:17cv0624] awarding Miniex attorneys' fees in the total amount of $898,429.00, which included $142,200.00 for Thornton's services.

On November 8, 2019, Lang filed a Motion to Withdraw as Thornton's attorney in the Retaliation Lawsuit. *See* Motion to Withdraw [Doc. # 289 in 4:17cv0624]. The Motion to Withdraw was granted by Order [Doc. # 290 in 4:17cv624] entered December 2, 2019.

In the Arbitration, Scott Link was appointed as the original arbitrator, but was replaced by Elizabeth Ray ("Arbitrator") on October 15, 2019. On October 23, 2019, the Arbitrator entered an unopposed partial judgment in the amount of $142,274.03, representing the fees and costs awarded in the Retaliation Lawsuit for Thornton's legal work on behalf of Miniex. On October 28, 2019, the Arbitrator conducted a full-day evidentiary hearing. On December 13, 2019, the Arbitrator issued her Final Award denying Thornton's request for additional fees. The Final Award was sent to the parties on December 16, 2019. *See* AAA Email [Doc. # 14-19].

On December 13, 2019, Bivens contacted Alton Hall, Thornton's attorney, stating that Bivens's law firm was "preparing to wire Ms. Thornton $142,274.03 for fees and costs as ordered by Judge Atlas." *See* Email String [Doc. # 14-14], p. 1. These communications resulted in a signed settlement agreement and payment of the fees awarded for Thornton's legal services in the Retaliation Lawsuit. *See id.* pp. 1-21; *see also* Settlement Agreement [Doc. # 14-15].

On January 17, 2020, Thornton filed a Notice of Intent to File Motion to Vacate

Arbitration Award [Doc. # 298 in 4:17cv0624] in the Retaliation Lawsuit.   On

March 16, 2020, Thornton filed a Motion to Vacate Arbitration Final Award [Doc.

# 304 in 4:17cv0624] in the Retaliation Lawsuit. On April 24, 2020, Miniex filed the

pending Petition to Confirm Arbitration Award [Doc. # 1] as a new civil case.   On

September 4, 2020, the Court denied Thornton's Motion to Vacate, filed in the

Retaliation Lawsuit, for lack of standing.   *See* Memorandum and Order [Doc. # 321

in 4:17cv0624].   On September 29, 2020, Thornton filed her Motion to Vacate [Doc.

# 14] in this case.

Miniex's Petition to Confirm and Thornton's Motion to Vacate filed in this case

have been fully briefed.   They are now ripe for decision.

## II.     **<u>APPLICABLE LEGAL STANDARD</u>**

A court "must confirm an arbitration award unless it is vacated, modified, or

corrected as prescribed in §§ 10 and 11." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552

U.S. 576, 582 (2008) (internal quotations omitted).   "Section 10 lists grounds for

vacating an award, while § 11 names those for modifying or correcting one." *Id*.

There are four statutory bases for vacating an arbitration award:

(1)     where the award was procured by corruption, fraud or undue
means;

(2)     where there is evidence of partiality or corruption in the arbitrators, or either of them;

(3)     where the arbitrators were guilty of misconduct . . . or any other misbehavior by which the rights of any party have been prejudiced; or

(4)     where the arbitrators exceeded their powers . . ..

9 U.S.C. § 10(a).[1]   These four categories are the exclusive grounds for vacating an arbitration award.  *Hall*, 552 U.S. at 586.

Review of an arbitration award is limited, giving "deference to the decisions of the arbitrator."  *OOGC Am., L.L.C. v. Chesapeake Expl., L.L.C.*, 975 F.3d 449, 453 (5th Cir. 2020).  A Court's review of a final arbitration award "is extraordinarily narrow" and the Court defers "to the arbitrator's decision when possible."  *Id.*  "The

---

[1]     Thornton seeks an order vacating the Final Award also under the Texas Arbitration Act which, like 9 U.S.C. § 10(a), provides:

(a)     On application of a party, the court shall vacate an award if:

(1) the award was obtained by corruption, fraud, or other undue means;

(2) the rights of a party were prejudiced by:
        (A) evident partiality by an arbitrator appointed as a neutral arbitrator; . . .

(3) the arbitrators:
        (A) exceeded their powers; . . .

TEX. CIV. PRAC. & REM. CODE § 171.088(a).  Because the statutes are virtually identical, the Court herein will cite only to the federal statute.

burden of proof is on the party seeking to vacate the award, and any doubts or uncertainties must be resolved in favor of upholding it." *Id*. (quoting *Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 544 (5th Cir. 2016)).

## III.   ANALYSIS

Thornton argues that the Final Award should be vacated because the Arbitrator failed to disclose a prior communication with Thornton, because of *ex parte* communications between Miniex and the Arbitrator, because Lang withdrew and improperly communicated with the Arbitrator, and because the Arbitrator exceeded her authority by refusing to consider evidence and by ignoring Texas law.

### A.   Argument Under § 10(a)(2)

In December 2018, before Ray was designated as the Arbitrator in this matter, Thornton contacted Ray's office by telephone[2] and exchanged emails with Ray to discuss the possibility of Ray serving as an expert witness for Thornton in the Arbitration.  It is undisputed that Ray did not disclose this communication with Thornton in her Disclosure Statement to the Parties.  Thornton argues that this communication is evidence of "evident partiality" that requires the Court to vacate the Final Award.

---

[2]   In the email exchange between Thornton and Ray, Thornton states unequivocally that she did not speak with Ray by telephone. *See* Thornton/Ray Email String [Doc. # 14-17], p. 3.

An arbitrator's nondisclosure must involve "a reasonable impression of bias stemming from a significant compromising connection to the parties in order for vacatur to be warranted under § 10(a)(2)." *OOGC*, 975 F.3d at 453 (internal quotations omitted). "This stern standard requires a concrete, not speculative impression of bias and calls for upholding arbitral awards unless bias was clearly evident in the decisionmakers." *Id*. (internal quotations omitted). "Indeed, for the arbitration award to be vacated, the party challenging the award must produce specific facts from which a reasonable person would have to conclude that the arbitrator was partial to its opponent." *Id*. (internal quotations omitted).

The brief emails between Thornton and Ray would not create in the mind of a reasonable, objective observer a belief that Ray was partial to Miniex or biased against Thornton. On December 19, 2018, Thornton emailed Ray asking for Ray's retainer amount to serve as Thornton's expert in an arbitration. *See* Thornton/Ray Email String [Doc. # 14-17], p. 3. That same day, Ray responded with her hourly rate, and advised that she would need to research whether her status as a part-time judge would preclude her from testifying in an arbitration. *See id.* at 2. Thornton responded by asking Ray if she could reduce her hourly rate from $750 per hour to $500 per hour. *See id.* On January 10, 2019, Ray emailed an apology for having missed Thornton's prior email, and stated that she hoped Thornton "got it worked out." *See id.* at 1.

There is no evidence of any further communication between Thornton and Ray regarding expert witness testimony.

The limited communication does not involve a "significant compromising connection" between Ray and a party to the Arbitration. *See, e.g., Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 282-83 (5th Cir. 2007) ("An arbitrator's failure to disclose must involve a significant compromising connection to the parties."). As a result, Ray's failure to disclose this email communication does not present evidence of partiality for which the Final Award should be vacated under § 10(a)(2).

Even if the limited email communication between Thornton and Ray suggested that Ray was impartial, which it does not, Thornton waived the issue by failing to raise it during the Arbitration. A party who argues an arbitrator's evident partiality as a basis for vacating the award generally must have objected during the arbitration proceeding, and the failure to do so results in waiver of the right to object after the award is issued. *See Bernstein Seawell & Kove v. Bosarge*, 813 F.2d 726, 732 (5th Cir. 1987); *Dealer Computer Servs., Inc. v. Michael Motor Co.*, 485 F. App'x 724, 727 (5th Cir. Aug. 14, 2012). Clearly, Thornton as a party to the emails was aware of the undisclosed communication. Thornton argues, however, that Ray was named Arbitrator three weeks before the evidentiary hearing, and that Thornton "was simply

not in a position to consider, investigate or address the issue of Judge Ray's partiality

in that time frame." *See* Reply [Doc. # 26], p. 6.  Thornton argues that she was not

"waiting to see whether the outcome [was to her] liking before deciding whether to

object to the arbitrator's partiality."  *Id*.  Thornton's arguments do not support

excusing her failure to object during the Arbitration.  She did not need to "investigate"

because she is the one who engaged in the communication with Ray.  Thornton's

assertion that she was not waiting to see if Ray ruled in her favor is inconsistent with

her representations elsewhere in the briefing that Ray "had consistently ruled in

Thornton's favor, and against Miniex, on various motions and procedural issues."

*See, e.g.,* Motion to Vacate, pp. 22-23.  During the Arbitration, while she perceived

that Ray was ruling in her favor, Thornton failed to raise her communication with Ray

as evidence of partiality.  As a result, the objection is waived.

In summary, Thornton has failed to demonstrate that the undisclosed email

communication with Ray is evidence of partiality in Miniex's favor.  In any event,

Thornton waived the argument by failing to raise it during the Arbitration.

## B.     Arguments Based § 10(a)(1)

Thornton argues that the Final Award should be vacated because (1) Miniex and

the Arbitrator engaged in *ex parte* communications, and (2) Lang, Thornton's prior

counsel withdrew and improperly communicated with the Arbitrator.  Thornton argues

that these improper communications show that the Final Award was obtained by corruption, fraud, or undue influence.   The Court applies a three-prong test to § 10(a)(1) arguments:  (1) the movant must establish the challenged conduct by clear and convincing evidence; (2) the corruption, fraud, or undue means must not have been discoverable upon the exercise of due diligence before or during the arbitration; and (3) the person challenging the award must show that the alleged conduct materially related to an issue in the arbitration.  *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 306 (5th Cir. 2004); *Morgan Keegan & Co. v. Garrett*, 495 F. App'x 443, 447 (5th Cir. Oct. 23, 2012).

> ***Communication Between Miniex and Arbitrator.*--**  Thornton alleges that the Final Award was obtained by fraud, corruption or undue influence because Miniex engaged in *ex parte* communications with the Arbitrator.   Thornton must prove this allegation by clear and convincing evidence.

In support of this § 10(a)(1) argument, Thornton has presented evidence that the Final Award was issued the same day and was for the same amount as a "settlement offer" from Miniex.  Thornton has also submitted Miniex's Response to the Motion to Modify Final Arbitration Award ("Motion to Modify") [Doc. # 14-18] filed in the Arbitration.   Thornton argues that this evidence "strongly suggests that *ex parte*

communications occurred between Miniex and Judge Ray prior to issuance of the

Final Award." *See* Motion to Vacate, p. 19.  Thornton's argument is unpersuasive.

On December 13, 2019, the same day the Final Award was issued but before

it was released to the parties, Bivens contacted Hall by email, stating that Bivens's law

firm was "preparing to wire Ms. Thornton $142,274.03 for fees and costs *as ordered*

*by Judge Atlas*."  *See* Email String [Doc. # 14-14], p. 1 (emphasis added).  It is clear

from this email and the subsequent related emails that the "settlement" being

negotiated involved the fees awarded in the Retaliation Lawsuit, not to any additional

fees that might be awarded in the Arbitration.

Thornton's assertion that a statement in Miniex's Response to the Motion to

Modify "amounts to a tacit admission . . . that she had received information regarding

the substance of the award prior to it being issued" is unsupported by the record.  In

the Response at issue, Miniex stated that she paid Thornton $142,274.03 "pursuant to

the Arbitration Award."  *See* Response to Motion to Modify [Doc. # 14-18], pp. 1-2.

Later in the Response, Miniex noted that the $142,274.03 awarded by the Arbitrator

is the same amount awarded in the Retaliation Lawsuit for Thornton's legal services

to Miniex.  *See id.* at 3.  Miniex stated clearly in the Response that she "settled the

Retaliation Suit and paid Ms. Thornton those funds as she was ordered  to do" by the

Arbitrator.  *See id.*  It is undisputed that on October 23, 2019, the Arbitrator entered

an unopposed partial judgment in the amount of $142,274.03.  The October 28, 2019

hearing and the Final Award addressed Thornton's claim that she was entitled under

a *quantum meruit* theory to recover additional fees.  The Final Award did not require

Miniex to pay additional attorney's fees to Thornton.  Therefore, any comments

regarding payments made by Miniex to Thornton "pursuant to the Arbitration Award"

or as ordered by the Arbitrator could only refer to the October 23, 2019 unopposed

partial judgment for $142,274.03.

Thornton has presented evidence that Miniex agreed to pay Thornton the

amount ordered in the Retaliation Lawsuit, that she expressed that agreement in an

email sent the same day the Final Award was issued without the parties' knowledge,

and that Miniex stated in her Response to Thornton's Motion to Modify the Final

Award that she had paid the amount ordered by the Arbitrator – the amount in the

October 23, 2019 partial judgment and the same amount awarded in the Retaliation

Lawsuit.  This is not clear and convincing evidence that Miniex engaged in *ex parte*

communications with the Arbitrator regarding the substance of the Final Award before

it was issued.  Indeed, it provides no evidence of *ex parte* communications between

Miniex and the Arbitrator and, therefore, provides no basis for this Court to vacate the

Final Award.

***Communications Between Lang and Arbitrator.***-- Thornton asserts that
she "has a good faith belief that Lang communicated her withdrawal, and potentially
more damaging information to the Arbitrator" that corrupted or unduly influenced the
Arbitrator. *See* Motion to Vacate, p. 22. Thornton states that the "inappropriate
timing and nature of Lang's withdrawal" corrupted the Arbitrator. *See id.* at 23.
Thornton has presented no evidence that supports this allegation.

On November 8, 2019, Lang filed a Motion to Withdraw as Thornton's counsel
in the Retaliation Lawsuit. The Motion to Withdraw contains nothing improper,
stating simply that "irreconcilable differences have arisen." *See* Motion to Withdraw
[Doc. # 289 in 4:17cv0624], ¶ 4. Bivens, Miniex's counsel in both the Retaliation
Lawsuit and the Arbitration, was provided notice of Lang's filing through the Court's
Electronic Case Filing system.

Thornton has presented evidence that Miniex made statements to the Arbitrator
regarding Lang's withdrawal. Those statements, however, were in the Response to
Thornton's Motion for Fees and Costs, which was filed as a pleading in the
Arbitration. The statements were not *ex parte* or otherwise improper. In the
Response, Bivens stated that she was "aware that Ms. Lang will be withdrawing from
representing Ms. Thornton post-award. Ms. Lang has already moved to withdraw
from representing Ms. Thornton in the Retaliation Suit." *See* Response to Motion for

Fees and Costs [Doc. # 14-21], p. 10.  These statements are not evidence of *ex parte* communications between Lang and the Arbitrator.

Thornton argues that it is "more than reasonable to conclude" that Lang communicated with the Arbitrator.  *See* Motion to Vacate, p. 22.  Thornton argues that improper communication between Lang and the Arbitrator "would explain the dramatic turn in the Arbitrator's decisions in the case."  *Id.*  Thornton relies on her perception that the Arbitrator "had consistently ruled in [her] favor, and against Miniex, on various motions and procedural issues" but ruled against Thornton in the Final Award.  *See id.* at 22-23.  It is not uncommon that one party successfully argues pretrial matters, yet the other party prevails in the final judgment.  Thornton has presented no evidence of any *ex parte* communications between Lang and the Arbitrator, and her suspicions do not constitute clear and convincing evidence.

### C.    Arguments Based on § 10(a)(4)

Thornton argues that the Arbitrator exceeded her authority by (1) refusing to consider all the evidence and (2) ignoring Texas law on *quantum meruit*.  Thornton's argument that the Arbitrator refused to consider the evidence is refuted by the record. In the Final Award, the Arbitrator states specifically that she "considered all of the evidence."  *See* Final Award, p. 4.  The Arbitrator analyzed Thornton's evidence, which she characterized as "scarce and sparce."  *See id.* at 3.  The Arbitrator noted that

the billing records were "artificial and untrustworthy." *Id*.  The Arbitrator considered all the evidence, but found that Thornton's evidence did not "support a claim for additional attorneys' fees under the theory of *quantum meruit*." *Id*.  The record demonstrates not that the Arbitrator refused to consider Thornton's evidence but, instead, that she considered the evidence and found it unpersuasive.

Thornton's argument that the Arbitrator exceeded her authority by ignoring Texas law is legally and factually without merit.  Initially, Thornton's argument that the Arbitrator failed to follow the law "amounts to nothing more than a freestanding claim of manifest disregard for the law, a ground for vacatur this court has squarely rejected."  *See Quezada v. Bechtel OG & C Constr. Servs., Inc.*, 946 F.3d 837, 844 (5th Cir. 2020).  Additionally, it is clear from the Final Award that the Arbitrator applied the correct legal standard.  The Arbitrator stated that *quantum meruit* compensates an individual for "the reasonable value of the work performed," citing *Hill v. Shamoun and Norman, LLP*, 554 S.W.3d 724, 732 (Tex. 2018).  *See* Final Award, p. 3.  The Arbitrator correctly identified the issue as "what is the reasonable value of the services performed" by Thornton.  *Id*.  There is no evidence that the Arbitrator ignored Texas law.

In summary, Thornton has failed to demonstrate that the Arbitrator exceeded her authority.

## IV.     CONCLUSION AND ORDER

Thornton has failed to present a legal or factual basis for this Court to vacate the Final Award.  As a result, it is hereby

**ORDERED** that the Petition to Confirm Arbitration Award [Doc. # 1] is **GRANTED**, and the Motion to Vacate Arbitration Final Award [Doc. # 14] is **DENIED**.  The Court will issue a separate final order.

SIGNED at Houston, Texas, this **16th** day of **December, 2020**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE